IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH NORTHERN DIVISION

| | |
|---|---|
| ORBIT IRRIGATION PRODUCTS, INC., a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MELNOR, INC., a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS**<br><br>Case No. 1:16-cv-137<br><br>Judge Clark Waddoups |

Orbit Irrigation Products, Inc. ("Orbit") brings this action against Melnor, Inc. ("Melnor") claiming patent infringement of certain of its irrigation timers and seeking injunctive relief. Melnor moves to dismiss on the basis that the court lacks personal jurisdiction. Although Melnor also initially challenged venue and moved the court to transfer venue, at the hearing on the motion held March 29, 2017, Melnor orally moved to withdraw its venue motion pending the Supreme Court's resolution of *TC Heartland, LLC v. Kraft Foods Group Brands, LLC*, S. Ct. No. 16-341, *cert. granted,* 2016 U.S. LEXIS 7572 (Dec. 14, 2016), which the court granted without prejudice.

Orbit has met its burden of showing that Melnor has sufficient contacts with Utah under the stream of commerce theory to allow the court to exercise personal jurisdiction. Accordingly, the court DENIES Melnor's motion to dismiss. (Dkt. No. 23).

## FACTUAL BACKGROUND

Orbit is a Utah corporation that manufactures irrigation timers. It holds U.S. Design Pat. No. D750,977, which protects various ornamental aspects of a line of Orbit's irrigation timers.

1

Melnor, a Delaware corporation with a principal place of business in Virginia, also manufactures irrigation timers. Orbit alleges that Melnor changed the designs on at least five models of its irrigation timers that now infringe on Orbit's patented design.

In support of its motion to dismiss for lack of personal jurisdiction, Melnor offered the Declaration of its President and Chief Executive Officer, Juergen Nies. According to Nies, Melnor does not have any direct business contacts in Utah, does not have an office or other place of business in Utah, is not licensed to do business in Utah, does not have any officers, employees, or agents residing in Utah, and does not warehouse any of its products in Utah. Melnor also asserts that it does not "directly" sell or ship any products to customers or distributors in Utah and does not target any of its commercial activities to Utah. Melnor does have an official website maintained on a server located in Virginia, but Melnor claims it is designed to be informational only.

In arguing that this court has jurisdiction, Orbit points to the following contacts that Melnor allegedly has to Utah. First, Melnor has intentionally established relationships with nationwide distributors including Home Depot and Amazon for the sale of its irrigation timers into the state of Utah. Second, Melnor's website purposefully directs consumers, including Utah consumers, to purchase its products through what it identifies as "Melnor retailers," which include Home Depot and Amazon, by providing "Where to Buy" links to these third-party websites that lead directly to pages displaying Melnor products. In the case of Amazon, a Utah consumer who follows the Amazon link from Melnor's website can select the product, input a Utah shipping address and payment information, and complete the purchase of the Melnor product. In the case of Home Depot, a Utah consumer who follows the Home Depot link from

Melnor's website is led directly to a page displaying Melnor products for sale that have two shipment options. The first allows the user to have the product shipped directly to a Utah address, and the second allows the customer to have the product shipped to any one of 22 Utah Home Depot stores that is convenient to the customer. Additionally, approximately five months prior to the initiation of litigation, two Orbit employees purchased Melnor products through these websites and have asserted that both Amazon and Home Depot either shipped the allegedly infringing product directly to a Utah address and/or shipped the allegedly infringing product to a Utah Home Depot store where it was then picked up by the purchaser.

## DISCUSSION

Federal Circuit law controls the determination of specific personal jurisdiction in a patent infringement case. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005).  This determination requires the court to make two inquiries:  First, does jurisdiction exist under Utah's long-arm statute? Second, "if such jurisdiction exists, would its exercise be consistent with the limitations of the due process clause?" *Id.* These "two inquiries coalesce into one" where the reach of the state long-arm statute is the "same as the limits of the due process clause, so that the state limitation collapses into the due process requirement." *Id.* (internal quotation marks omitted). Because Utah's long arm statute extends to the limit of federal due process, *Starways, Inc. v. Curry*, 1999 UT 50 ¶ 7, 980 P.2d 204, 206 (Utah 1999), the sole inquiry here is whether due process requirements are met.

Orbit bears the initial burden of establishing personal jurisdiction. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). Where there has been no discovery on the jurisdictional issue, Orbit is required only to make a prima facie showing of jurisdiction to defeat

Melnor's motion to dismiss. *Id.* at 1349. In evaluating this showing, the court is required to resolve any factual disputes in the light most favorable to Orbit. *Id.* The court's three-part inquiry under Federal Circuit law is "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998). At oral argument, Melnor specifically indicated that it does not contest the second or third part of this test. Therefore, the court evaluates only whether Orbit has successfully shown that Melnor purposefully directed activities at Utah residents.

The parties agree that *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) governs what constitutes purposeful availment of a forum in the context of stream of commerce cases. "Under the stream of commerce theory, if . . . the defendant purposefully shipped the accused product into a state through an established distribution channel, and the cause of action for patent infringement is alleged to arise out of these activities, then no more is usually required to establish specific jurisdiction." *Phillip M. Assocs., LLC v. Winbond Elecs. Corp.*, No. 1:05-CV-64 TS, 2010 WL 3489400, at *7 (D. Utah Sept. 1, 2010) (citing *Beverly Hills Fan*, 21 F.3d at 1565 (Fed. Cir. 1994) (internal quotation marks omitted).

According to *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), Melnor's arrangement with nationwide retailers who have an established distribution channel is a significant fact that supports specific jurisdiction. "[I]f the sale of a product of a manufacturer or distributor . . . is not an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product in other states, it is not unreasonable to

subject it to suit." *Id.* at 297. Furthermore, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297-98.

In *Beverly Hills Fan*, the Federal Circuit also discussed the Supreme Court's decision in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987) that addressed the split in lower courts about the "exact requirements of the stream of commerce theory." *Beverly Hills Fan*, 21 F.3d at 1566. It noted that four justices, as expressed by Justice O'Connor, would require "more than the mere act of placing a product in the stream of commerce . . . there must be in addition 'an action of the defendant purposefully directed toward the forum State.'" *Id.* (citing *Asahi*, 480 U.S. at 112). For another four justices, as expressed by Justice Brennan, a showing of "additional conduct" is not needed when the stream of commerce involves "the regular and anticipated flow of products from manufacture to distribution to retail sale," as opposed to an "unpredictable current[] or edd[y]."[1] *Id.* (citing *Asahi*, 480 U.S. at 117). Ultimately, the Federal Circuit did not join this debate in *Beverly Hills Fan*, because it found that under either theory, the defendants purposefully availed themselves of the forum by placing a product in the stream of commerce to be shipped via an established distribution channel, with known likely destinations for their products, such that they could reasonably have anticipated being brought into court at those destinations.

Orbit also directs the court to *American Covers, Inc. v. Premier Accessory Group, LLC*, 2:15-cv-432 TS, 2016 WL 1337253 (D. Utah Apr. 5, 2016), a case with facts similar to those

---

[1] "Justice Stevens joined in the judgment of the Court, but did not join either of the conflicting opinions on the stream of commerce theory." *Beverly Hills Fan*, 21 F.3d at 1566 n. 16.

here where the court held that federal due process was met for jurisdictional purposes. In *American Covers*, the manufacturer defendant sold its products to AutoZone, which had retail locations in all 50 states. In addition, the defendant also had a website with a "Buy It Now" button that navigated to a listing for its products on Amazon. The defendant argued that it did not have a specific intention of having its products sold in Utah, and that once it sold the products to AutoZone, it had no control over where AutoZone resold the products. The court concluded that defendant's intentional sales to AutoZone, a 50-state distributor, was the defining fact sufficient to constitute purposeful availment of the Utah forum, along with the sales to AutoZone not being a one-time, isolated occurrence.

      The preceding case law supports specific personal jurisdiction over Melnor. Melnor purposefully established what it calls "Melnor retailer" relationships with Home Depot and Amazon, whereby it sells and distributes the allegedly infringing timers in Utah through these established distribution channels. Orbit alleges that Home Depot has 1,965 stores nationwide and 22 in Utah alone, while Amazon is the largest online retailer in the United States and sells and delivers products in all fifty states. Under *Beverly Hills Fan*, Melnor's intentional sale of its products into the nationwide distribution networks established by Home Depot and Amazon is sufficient for jurisdiction when the patent infringement arises from these activities. There is no allegation by Melnor that its sales were an isolated, one-time occurrence that would not warrant jurisdiction under *World-Wide Volkswagen*. Instead, there is evidence that Melnor routinely and regularly sells to its "Melnor retailers" for the specific purpose of indirectly serving the 50-state market for its irrigation timers. Just as defendant argued in *American Covers*, however, Melnor similarly contends that it did not specifically target Utah or Utah consumers. While Melnor

correctly cites Judge Stewart's reasoning in *American Covers* that "the actions of AutoZone and Amazon" cannot automatically be imputed to the defendant, and that "doing business with a company that does business in [the forum] is not the same as doing business in the forum," 2016 WL 1337253 *3, it is defendant's actions of intentionally and regularly distributing its products through established nationwide distribution channels that make personal jurisdiction appropriate even in the absence of additional contacts with the state beyond distribution through its retailers.

Melnor also argues that the Supreme Court's decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) compels a different result. In a plurality opinion, Justice Kennedy criticized the stream of commerce theory to the extent that prior cases have focused on the foreseeability of a defendant's product reaching the foreign jurisdiction, rather than on whether the defendant "targeted the forum" or "'seek[s] to serve' a given State's market." *Id.* at 2788. Melnor argues that Justice Kennedy's opinion, requiring something more than a defendant merely placing a product into the stream of commerce, is the controlling reasoning in *McIntyre*.

Orbit, and the court, disagree with Melnor's argument. In *Marks v. United States*, 430 U.S. 188 (1977), the Supreme Court explained how the holding of a case should be viewed when there is no majority supporting the rationale of any opinion. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Id.* at 193 (internal punctuation omitted). The concurring opinion with the narrowest holding in *McIntyre* was Justice Breyer's, joined by Justice Alito, who rejected the requirement to show that a defendant "targeted the forum" because of the difficulty of defining that standard in cases like this one, "when a company targets the world by

7

selling the products from its Web site . . . [or] instead of shipping the products directly, a company consigns the products through an intermediary (say Amazon.com) who then receives and fulfils the orders." *Id.* at 2293. Rather, Justice Breyer's opinion stated that he would "adhere strictly to our precedents," *id.*, which in the case of the stream of commerce analysis focuses on how the defendant has sought to serve a given state's market, and in particular, whether a defendant has purposefully availed itself of a nationwide distribution channel.

Thus, because the facts of this case demonstrate that Melnor purposefully established relationships with "Melnor retailers" Home Depot and Amazon, who have established nationwide distribution channels that reach into Utah, Orbit has made a prima facie case to establish specific personal jurisdiction. Melnor's contentions that it did not avail itself of the forum in Utah because consumers cannot buy products directly through Melnor, or that it did not work with Home Depot or Amazon to form the distribution channels used by those companies, are unavailing. While the *McIntyre* court plurality opinion held that the mere foreseeability that defendant's products could reach the forum state is insufficient to establish purposeful availment, it did note that "in an appropriate case" defendants can be subject to jurisdiction without entering the forum where "distributors 'seek to serve' a given State's market." *McIntyre*, 131 S. Ct. at 2788. Home Depot and Amazon seek to serve a nationwide market, including Utah, and Melnor has continuously and purposefully engaged them to sell its products. Thus, *McIntyre* does not preclude this result. "[S]ellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it." *A.L. Enterprises, Inc. v. Sebron*, No. 2:08-cv-536 DS, 2008 WL 4356958, at *2 (D. Utah, Sept. 17,

2008). Even if "something more" than a nationwide distribution channel were required under *McIntyre*, Melnor's website's direct links to Home Depot and Amazon's websites may constitute that something, if only because they demonstrate that Melnor intended not just to sell to retail giants for them to resell, but to specifically encourage its customers in any state within the United States to access its website to purchase Melnor's products. Therefore, "[e]ven though the ordering process that ultimately accomplished the sale and shipment of [the] Accused Products to the state of Utah was done through a distributor, [d]efendant received an economic benefit from the sales," *Parah, LLC v. G'Strat LLC*, No. 2:13-cv-756 DB, 2014 WL 545871, at *4 (D. Utah Feb. 10, 2014), making any further analysis of defendant's website functions irrelevant in the context of the stream of commerce theory.

## CONCLUSION

Because Melnor intentionally teamed up with Home Depot and Amazon to advertise and distribute its allegedly infringing irrigation timers in order to put them into the stream of commerce with the expectation that they would be available for purchase throughout the country, including Utah, the court concludes that it is not contrary to due process standards to assert jurisdiction over Melnor. Accordingly, the court DENIES defendant's motion to dismiss for lack of personal jurisdiction. Defendant's motion to dismiss for improper venue, or in the alternative, to transfer venue, is dismissed without prejudice. (Dkt. No. 23.)

DATED this 3rd day of April, 2017.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge
